CARL A. KIRCHOFF v. ST. JOSEPH'S HOSPITAL.[1]

May 3, 1935.

No. 30,390.

[1]Reported in 260 N. W. 509.

*S. S. Larson,* for appellant.

*Roy E. H. Swedeen* and *John P. Moylan,* for respondent.

DEVANEY, CHIEF JUSTICE.

This is a suit to recover damages resulting from defendant's alleged failure to use due care.

March 13, 1933, plaintiff's wife entered defendant hospital in anticipation of becoming a mother. The next day she gave birth to a son. The child was placed under the care of the sisters and nurses of defendant hospital. On the morning of the fifth day of her confinement the nurse brought a baby to plaintiff's wife at the regular feeding time. The baby was put to the mother's breast when, a few minutes later, the nurse returned and informed the mother that there had been a mistake and that the baby at her breast was not her child. It is the claim of plaintiff that the baby taken to the mother by mistake had sores and scabs on its head and was suffering from impetigo, a type of skin disease. It is alleged that because the mother nursed the wrong child her own baby subsequently contracted the same disease. It is not disputed that plaintiff's baby during its stay in the hospital did develop a sore on its ear; that the disease was diagnosed as impetigo; and that the baby was treated by the doctor for this disease while in the hospital and after it had been taken home.

Plaintiff brought two actions, one as father and natural guardian of the baby and the other in his own name for expenses incurred for medical care and attention of the baby. The two were consolidated and tried together. The jury returned a verdict of $100 for plaintiff in the first action and a verdict of $82 for plaintiff in the second action. From a denial of its blended motion for judgment notwithstanding the verdict or for a new trial defendant hospital takes this appeal.

The only question presented is whether the evidence is sufficient to support the verdict. It is undisputed that the wrong baby was taken to the mother and that her own baby subsequently developed

the disorder here described. The hospital records and the testimony of a nurse at the hospital establish the fact that plaintiff's baby contracted impetigo while in the hospital. The mother testified that the baby brought to her by mistake had sores and scabs on its head and that its hands were tied. A doctor testified that impetigo could be contracted by a child if it came in contact with another child who had the disease or with things with which the diseased child had been in contact, such as clothing. From these facts the jury might well find that the nurse took the wrong child to the mother; that this child was suffering from a skin disease; that plaintiff's baby contracted impetigo by coming into contact with the mother shortly after the diseased baby had been taken away. Further, the jury could well find defendant hospital negligent in taking the wrong baby to the mother. Defendant's nurse testified that every baby had a band or tag on its wrist with its name clearly marked thereon. It is a permissible inference that, had defendant's agents exercised due care, they would not have taken to plaintiff's wife the wrong baby.' The question as to the qualifications of an expert witness, one Dr. Wallinga, was one of fact for the trial court. We will not reverse the trial court's ruling allowing him to testify unless manifest error appeared. Such does not appear here. We have examined the charge with care and find no error.

Affirmed.